Filed 7/26/23  P. v. Arroyo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

ALBERTO ARROYO,

      Defendant and Appellant.

E080091

(Super.Ct.No. FVI020194)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Michael A. Camber, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Lynne G. McGinnis and Ksenia Gracheva, Deputy Attorneys General, for Plaintiff and Respondent.

In 2004, defendant and appellant Alberto Arroyo, along with a codefendant, fired shots at the home of the victim, killing him. In 2006, a jury convicted defendant of first degree murder, and he received a sentence of 25 years to life.[1] (Pen. Code,[2] §§ 187, subd. (a).) On September 17, 2019, he petitioned for resentencing pursuant to section 1172.6 (former § 1170.95).[3] Following an evidentiary hearing, the trial court denied the petition on the grounds the record of conviction demonstrates the defendant was convicted of first degree murder as a perpetrator or a direct aider and abettor and not under the natural and probable consequences doctrine.

On appeal, defendant contends the postjudgment order denying his petition should be reversed because the trial court's decision did not comply with the dictates of section 1172.6. According to defendant, the court failed to weigh the evidence or independently find beyond a reasonable doubt that defendant could or could not be presently convicted of murder. We reject his contention. Moreover, because the record of conviction establishes defendant's ineligibility for resentencing relief, we affirm.

---

[1] In a separate trial, the codefendant was also convicted of first degree murder.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered Penal Code section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.) The current section numbering will be used throughout this opinion.

# I. PROCEDURAL BACKGROUND AND FACTS[4]

## A.     *Defendant's Convictions.*

On the afternoon of October 1, 2004, defendant's codefendant parked a black sport utility vehicle (SUV) in front of the victim's home.  A physical fight broke out between the codefendant and his passenger, on one side, and two of the victim's friends, on the other side.  As the codefendant and his passenger were leaving, they told the victim's friends that they would be back with their "homies."  The victim was not present during the fight.

In the early morning hours of October 2, 2004, the victim and his fiancée were sleeping when they were awakened by the sound of breaking glass.  Shooting began, and the victim shielded his fiancée's body with his own.  The victim was shot multiple times and died.  A neighbor saw three or four people get out of an SUV, start shooting, and run back to the same SUV she had seen in front of the victim's house the previous afternoon.

During the investigation of the murder, sheriff's deputies interviewed defendant; both audiotape and videotape of the interview were played for the jury.  In the interview, defendant stated he had been at a party at his cousins' apartment on the evening of October 1, 2004.  The codefendant and his passenger were there, and they said they had

---

[4] The facts are taken from trial testimony in *People v. Arroyo* (Super. Ct. Riverside County, 2006, No. FVI-020194).  On May 16, 2023, we granted the Attorney General's unopposed motion to take judicial notice of the record in defendant's prior appeal, *People v. Arroyo* (Apr. 1, 2009, E040796) [nonpub. opn.] (*Arroyo*), which includes both the clerk's and reporter's transcripts.

Because a complete recitation of the facts is unnecessary we provide only those facts relevant to the issue on appeal.

been in a fight. The passenger had visible facial injuries and said, "'[n-----] jumped me,'" and "I'll get 'em back, woop woop." The codefendant said, "they were gonna go get these [n------]," but the passenger said he would not come along, and he was waiting for a gun. Defendant and the passenger argued about who had the "keys for the hood," meaning who was in charge of a neighborhood from a gang's perspective.

After midnight, defendant and a man called, "Night Owl," joined the codefendant and drove back to the victim's house. The codefendant had a revolver and Night Owl had a rifle. They parked near the victim's house, and the codefendant said he was "gonna beat the shit outta this fool." The codefendant told defendant to stay in the car and maintain a lookout. Defendant stayed in the car, except he got out once to urinate nearby; he stated he was drunk. Night Owl broke out the front window of the residence, but his rifle jammed. The codefendant fired through the side window with a revolver. After the shooting, the three drove back to San Bernardino and split up. Defendant stated he had thrown away the shoes he had been wearing that night.

Defendant admitted he was from "Mt. Vernon." While in jail, before trial, defendant made a recorded telephone call, which was played for the jury. In that call, defendant referenced, "'keeping the family up.'" Detective Williams testified that means "committing crimes or doing things that support or represent the gang." A gang expert testified that meant "[n]ot letting the gang [be] disrespected." During the telephone call, the person to whom defendant was speaking referred to "putting in work." Defendant responded, "What do you think I'm doing over here?" The gang expert testified that "putting in work" for the gang is how a member earns "so-called stripes" and earns

4

respect in the gang. Defendant stated, "It's West Side Verdugo, I was saying my shit out loud" in the jail. The expert opined that West Side Verdugo is a criminal street gang, and defendant had announced his gang identity. In the officer's opinion, the victim was murdered to benefit the gang.

On April 18, 2006, a jury convicted defendant of first degree murder (§ 187, subd. (a)) and found true the allegations that the offense had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and that a principal in the murder had intentionally discharged a firearm causing death (§ 12022.53, subds. (b), (d), (e)(1)). The trial court sentenced him to a total indeterminate term of 50 years to life. On direct appeal, this court reversed the enhancements under section 186.22, subdivision (b), and 12022.53, subdivisions (b), (d) and (e)(l), on the grounds of instructional error, and corrected the lower court's minutes to reflect that defendant was sentenced to 25 years to life with the possibility of parole for the murder; otherwise, we affirmed the judgment. (See *Arroyo*, *supra*, E040796.)

B. *Defendant's Petition for Resentencing.*

On September 17, 2019, defendant petitioned for resentencing under section 1172.6 alleging he was not the actual killer, but was convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine. The People asserted the jury was not instructed as to either of those theories as to first degree murder and, thus, defendant stood convicted as a direct aider and abettor, who acted with express malice. In response, defense counsel argued that "the factual underpinnings in the record

5

indicate that this falls into the *Banks Scoggins* [*Clark*[5]] scenario," i.e., defendant may have aided and abetted, but he was not a major participant who acted with reckless indifference. (*People v. Owens*, *supra*, 78 Cal.App.5th at p. 1020.) The trial court considered the briefs filed in the case, the court file and record of conviction, and denied the petition, stating: "The record of conviction demonstrates that the defendant was convicted of first degree murder as a perpetrator or a direct aider and abettor and not under the natural and probable consequence doctrine. Accordingly, the People have proven beyond a reasonable doubt the petitioner is guilty of murder under [the amended statutes]."

## II. DISCUSSION

Defendant challenges the trial court's decision and contends the "court appears to have only looked backwards and found evidence supported a conviction for murder under the law as amended, effectively employing a substantial evidence test." He faults the court for failing to "weigh the evidence [or] independently find beyond a reasonable doubt that [defendant] could or could not be presently convicted of murder." Asserting that the court's decision "did not comply with the dictates of . . . section 1172.6," defendant requests this court "reverse and order the [trial] court to conduct a new hearing consistent with the statute." We affirm.

---

[5] *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*). "The *Banks*, *Clark*, and *Scoggins* factors are derived from the United States Supreme Court's death penalty opinions in *Tison v. Arizona* (1987) 481 U.S. 137 . . . and *Enmund v. Florida* (1982) 458 U.S. 782 . . . ." (*People v. Owens* (2022) 78 Cal.App.5th 1015, 1020, fn. 3.)

*A.     Applicable Legal Principles.*

"A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced." (§ 1172.6, subd. (a).) The petition must allege the petitioner was (1) charged with one of the enumerated crimes under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) convicted of murder or attempted murder or manslaughter; and (3) the petitioner could not presently be convicted of murder or attempted murder because of changes to sections 188 or 189 (Stats. 2018, ch. 1015, §§ 2, 3) made effective January 1, 2019. (§ 1172.6 subd. (a)(1), (2), (3).)

Where the petition complies with the three requirements, the superior court proceeds to section 1172.6, subdivision (c), to assess whether the petitioner has made "a prima facie showing" for relief. (See *People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*).) "Once a petitioner establishes a prima facie case for relief and the superior court issues an order to show cause, the matter proceeds to an evidentiary hearing at which it is the prosecution's burden to prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. [Citation.] If the superior court finds beyond a

reasonable doubt that the petitioner is guilty of murder notwithstanding the amendments to sections 188 and 189, the petitioner is ineligible for relief under section 1172.6. [Citations.] [¶] While the superior court acts as an independent fact finder in determining whether the People have met their burden, on appeal, the reviewing court applies the substantial evidence standard to the superior court's findings." (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951 (*Vargas*).)

Section 189, as amended, limits liability under a felony-murder theory principally to "actual killer[s]" and those who, "with the intent to kill," aid or abet "the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(1), (2).) "Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2'—that is, the statute defining the felony-murder special circumstance." (*People v. Strong* (2022) 13 Cal.5th 698, 708; see § 189, subd. (e)(3).)

### B. *The Trial Court Complied with Section 1172.6.*

Defendant faults the trial court for "effectively employing a substantial evidence test" and failing to "weigh the evidence [or] independently find beyond a reasonable doubt that [he] could or could not be presently convicted of murder." However, "section 1172.6, subdivision (d)(3) does not contemplate a whole new trial on all the elements of murder. [Citation.] Rather, '[t]he retroactive relief provided by [section 1172.6] is a legislative "act of lenity" intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a

new trial or increased punishment.' [Citations.] Thus, the focus at the evidentiary hearing phase of an 1172.6 petition is 'on evidence made relevant by the amendments to the substantive definition of murder,' which, in the context of section 188, requires 'the prosecution to prove that all principals to a murder acted with malice aforethought.'" (*Vargas*, *supra*, 84 Cal.App.5th at p. 952.) Consequently, we reject defendant's claim of error.

### C.    *Defendant Is Ineligible for Section 1172.6 Relief.*

Assuming the trial court erred in its analysis, the error was harmless because the record of conviction establishes that the jury did not convict defendant of murder pursuant to the felony-murder rule, the natural and probable consequences doctrine, or any other theory involving imputed malice. (See § 1172.6, subd. (a); *Lewis*, *supra*, 11 Cal.5th at pp. 957, 959.)

An amended information charged defendant (and his codefendant) with murder (§ 187, subd. (a)) and further alleged the murder was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)), and a principal personally and intentionally discharged a firearm (§ 12022.53, subd. (d)). The trial court instructed the jury that to find defendant guilty of murder, it must find that he had "unlawfully kill[ed] a human

being with malice aforethought."**6** CALJIC No. 8.11 stated that malice may be express or implied, but it is express "when there is manifested an intention unlawfully to kill a human being."**7** CALJIC No. 8.20 instructed that a "murder which is perpetrated by any kind of willful, deliberate, and premeditated killing with express malice aforethought is murder of the first degree," and that if the jury found "that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion of other condition precluding the idea of deliberation, it is murder of the first degree." Additionally, the jury received

---

**6** CALJIC No. 8.10 was read to the jury, in pertinent part: "Every person who unlawfully kills a human being with malice aforethought, is guilty of the crime of Murder in the First or Second Degree in violation of Penal Code Section 187. Also, every person who unlawfully kills a human being during the commission or attempted commission of Penal Code Section 246, Shooting at an Inhabited Dwelling, a felony inherently dangerous to human life, is guilty of the crime of Murder in the Second Degree. [¶] In order to prove these crimes, each of the following elements must be proved: [¶] 1. A human being was killed; [¶] 2. The killing was unlawful; and [¶] 3(a). The killing was done with malice aforethought for First or Second Degree Murder [¶] OR [¶] 3(b). The killing occurred during the commission or attempted commission of Penal Code Section 246, Shooting at an Inhabited Dwelling, for Murder in the Second Degree."

**7** CALJIC No. 8.11, was read to the jury, in pertinent part: "'Malice' may be either express or implied. [¶] [Malice is express when there is manifested an intention unlawfully to kill a human being.] [¶] [Malice is implied when: [¶] 1. The killing resulted from an intentional act; [¶] 2. The natural consequences of the act are dangerous to human life; and [¶] 3. The act was deliberately performed With knowledge of the danger to, and with conscious disregard for, human life.] [¶] [When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought.] [¶] The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed. [¶] The word 'aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act."

10

instructions on second degree murder,[8] the natural and probable consequences doctrine as applied to second degree murder,[9] felony murder as applied to second degree murder,[10] and aider and abettor principles (CALJIC Nos. 3.01, 3.02, and 8.34). As the record shows, and as defendant concedes, the jury was only instructed on natural and probable consequences and felony murder as to second degree murder, but not as to first degree murder.

Consistent with the jury instructions, the trial prosecutor argued that defendant aided and abetted a fellow gang member in a murder for revenge. The prosecutor added: "If [defendant] goes along helping as a lookout thinking that [the codefendant] is just going to shoot up the place, he's still guilty of the second-degree murder of [the victim].

---

**8** CALJIC No. 8.30, was read to the jury, in pertinent part: "*Murder of the second degree* is [also] the unlawful killing of a human being with malice aforethought when the perpetrator intended unlawfully to kill a human being but the *evidence is insufficient to prove deliberation and premeditation*." (Italics added.)

**9** CALJIC No. 8.31 was read to the jury, in pertinent part: "*Murder of the second degree* is [also] the unlawful killing of a human being when: [¶] 1. The killing resulted from *an intentional act*, [¶] 2. *The natural consequences of the act are dangerous to human life*, and [¶] 3. *The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life*. [¶] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being." (Italics added.)

**10** CALJIC No. 8.32 was read to the jury, in pertinent part: "The *unlawful killing of a human being*, whether intentional, unintentional. or accidental, which occurs *as the direct causal result of the commission or attempted commission of the crime of Penal Code Section 246, Shooting at an Inhabited Dwelling*, *is murder of the second degree* when the perpetrator had the specific intent to commit that crime. [¶] The specific intent to commit Penal Code Section 246, Shooting at an Inhabited Dwelling, and the commission or attempted commission of that crime must be proved beyond a reasonable doubt." (Italics added.)

If he acts as a lookout [for the murder], that's an act that furthers, promotes, and assists the crime." After discussing the elements of murder and the requirements for the jury to find the perpetrators acted with malice, the prosecutor argued that "there's sufficient evidence this was a willful, premeditated, deliberate murder that defendant aided and abetted; that he knew exactly what was going to happen when he went out there; that he knew that Night Owl and [the codefendant] were going back to get revenge for whatever indignity he thinks [the codefendant] suffered. The defendant was going to help him out by being a lookout."

The record establishes that the jury rejected the felony-murder rule, the natural and probable consequences doctrine, or any other theory involving imputed malice, when it found defendant guilty of first degree murder.

## III. DISPOSITION

The postjudgment order denying defendant's petition for resentencing under section 1172.6 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                    Acting P. J.

We concur:


MILLER
            J.

FIELDS
            J.

12